UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Shirley Bar-Meir,**                                              Civil No. 10-936 (SRN/JJK)

　　　　　　**Plaintiff,**
　　　　　　　　　　　　　　　　　　　　　　　　**MEMORANDUM OPINION**
　v.                                                                                 **AND ORDER**

**University of Minnesota,**

　　　　　　**Defendant.**
_____

Mitchell R. Hadler, Law Office of Mitchell R. Hadler, 701 Fourth Avenue South, Suite 500, Minneapolis, Minnesota 55414, and Peter J. Nickitas, Peter J. Nickitas Law Office, LLC, 431 South Seventh Street, Suite 2446, P.O. Box 15221, Minneapolis, Minnesota 55415, for Plaintiff

Mark B. Rotenberg and Brent P. Benrud, University of Minnesota, Office of the General Counsel, 200 Oak Street Southeast, Suite 360, Minneapolis, Minnesota 55455, for Defendant
_____

SUSAN RICHARD NELSON, United States District Judge

　　　Before the Court is a June 13, 2012 letter from Plaintiff's counsel in this matter [Doc. No. 116]. Pursuant to Local Rule 7.1(h), Plaintiff requests leave to move for reconsideration of this Court's June 8, 2012 Order (the "Order") [Doc. No. 114]. Plaintiff identifies the following grounds under which she seeks reconsideration of the Court's ruling: (1) the Court's "reliance" on the unpublished Minnesota Court of Appeals decision, Yakubek v. Westbrooke Patio Homes Ass'n, Inc., C7-97-506, 1997 WL 613667 (Minn. Ct. App. Oct. 7, 1997); (2) the Court's rulings regarding Plaintiff's disability claims; and (3) the Court's rulings regarding Plaintiff's claims related to her "bumping rights." Defendant filed a brief letter in response to Plaintiff's request, arguing that Plaintiff's request should be denied. (Doc. No. 117.) Having considered Plaintiff's arguments, reconsideration of the Court's summary judgment rulings is not warranted, as set

forth herein.

### A. Citation to Unpublished Opinion

Regarding the Court's citation to the Yakubek decision, in the Order, the Court noted that it was unaware of Eighth Circuit authority addressing whether a person is considered disabled by virtue of being unable to work for a particular employer. (Order at 51-52 [Doc. No. 114].) The Court then cited non-binding authority from other courts on this issue, i.e., that a workplace personality conflict – even one triggering depression – is not enough to establish disability where it is limited to a particular relationship. The Court also noted that the Yakubek decision provided guidance as well. (Id. at 52) (stating, "As to Plaintiff's disability claim under the MHRA, the Court finds similar guidance in Yakubek . . . .") The Court quoted language from Yakubek observing that, in general, "the inability to obtain or maintain one job is not a material limitation of one or more major life activities." (Id.) (quoting Yakubek, 1997 WL 613667 at *3.) The Court did not state that the Yakubek decision controlled the outcome of its decision. It was merely one Minnesota state court decision, among other federal decisions from outside this Circuit, which the Court found persuasive.

The Court's use of this decision was fully in accord with standard legal practice, in which non-binding legal authority may be cited for its persuasive value, particularly in the absence of binding legal precedent on the issue in question. Moreover, the reference to Yakubek was consistent with this Court's Local Rules, which specifically contemplate citations to unpublished authority. See L.R. 7.1(i) (stating that "[a] party shall file and serve a copy of any judicial opinion, order, judgment, or disposition with the brief or other paper in which it is cited, only to the extent that it is not available in a publicly accessible electronic database.") It is also

consistent with Minnesota law, which recognizes that unpublished Court of Appeals opinions are not precedential. Minn. Stat. § 490A.08, subd.3(c). That same rule also contemplates citations to unpublished opinions, as it requires parties to provide copies of any unpublished opinions to which they cite. Id. To the extent that Plaintiff challenges the Court's citation to Yakubek on substantive grounds, the Court addresses Plaintiff's disability claims below. For all of these reasons, the Court rejects Plaintiff's argument that the court's "reliance" on Yakubek constitutes reversible error warranting reconsideration of its Order.

### B. Disability Claims

Plaintiff argues that the Court, in concluding that Plaintiff was not disabled, applied a more limiting standard to Plaintiff's disability claims than contemplated by current law. The ADA Amendments Act of 2008 ("ADAAA" or "the Act") was signed into law on September 25, 2008, with a statutory effective date of January 1, 2009. Pub. L. No. 110–325. The ADAAA applies to Plaintiff's federal disability discrimination claims arising after the Act's January 1, 2009 effective date.[1]

The ADAAA has retained the three-pronged definition of disability cited by the Court in its Order: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1) (2009). While the ADAAA retained the three-pronged definition of disability, it now states that "[t]he definition of 'disability' [under the

---

[1] The Court notes that Plaintiff's Second Amended Complaint is not a model of succinct pleading in that it alleges disability claims arising under the ADA Amendments Act of 2008 ("ADAAA") (Second Am. Compl. ¶ 1), but otherwise generally refers to the ADA (id. ¶¶ 80, 81, 94, 97, 101). To the extent that Plaintiff asserts claims under the ADA, the analysis and conclusions set forth in the Order apply.

3

Act] shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms [of the Act]." 42 U.S.C. § 12102(4)(A).  The Act emphasizes that the term "substantially limits" under the actual disability prong shall be interpreted as broadly as possible.  42 U.S.C. § 12102(4)(A) & (B).   The Act clarifies that as long as an impairment substantially limits one major life activity, it need not limit other major life activities, such as working, in order to be considered a disability. 42 U.S.C. § 12102(4)(C).   Finally, the Act explains that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).  Major life activities include concentrating and thinking, 29 U.S.C. § 12102(2)(A), and interacting with others, 29 C.F.R. § 1630.2(i).

In the Second Amended Complaint, Bar-Meir alleges that she suffers from depression which substantially impairs "the major life activities of thinking, concentration, and social interaction, with or without reasonable accommodations of medication, out-patient psychological counseling and/or periodic leaves of absence." (Second Am. Compl. ¶ 18 [Doc. No. 21].) Plaintiff contends that in the Order, the Court limited its analysis to whether Plaintiff's depression substantially impaired the major life activity of "working."

In the Order, the Court cited numerous instances in the record, specifically Plaintiff's medical records, as well as the pleadings in this case, in which Bar-Meir's depression was exacerbated by working with Ms. Shifrin, her supervisor. (Order at 53-57 [Doc. No. 114].)   The Court concluded that Plaintiff did not establish that she was "disabled" under the law, because the record demonstrated that Plaintiff's depression was caused and exacerbated by working for a particular supervisor.  (Id. at 57.)  Plaintiff contends that she did not allege in the Second

Amended Complaint that "working" was one of the major life activities affected by her depression. She contends that the Court failed to address whether the life activities that she did allege – thinking, concentration and social interaction – were substantially limited by her impairment.   (Pl's Letter at 2 [Doc. No. 116].)

As stated in the Order [Doc. No. 114 at 51], to establish a prima facie case of disability discrimination, Bar-Meir must show that: (1) she had a disability within the meaning of the ADA [and/or ADAAA] and MHRA; (2) she was qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) she suffered an adverse employment action because of her disability.  Finan v. Good Earth Tools, Inc., 565 F.3d 1076, 1079 (8th Cir. 2009). Under the ADAAA, the causation element was amended to prohibit an employer from discriminating against a qualified individual "on the basis of disability," 42 U.S.C.A. § 12112(a), as opposed to the ADA's prohibition against discrimination "because of the disability."

The Court therefore applies the ADAAA's "on the basis of disability" language to determine whether there are any disputed issues of material fact with regard to Bar-Meir's ADAAA discrimination claims.   Viewing the facts in the light most favorable to Bar-Meir, even if the Court were to assume that her concentration, thinking and social interaction were substantially impaired, qualifying her as disabled, and that she was qualified to perform the essential functions of her job, with or without reasonable accommodation, she nevertheless fails to make out a prima facie case. Bar-Meir's discrimination claims fail on the basis of causation. The evidence shows that no reasonable jury could find that she suffered an adverse employment action on the basis of her disability.

As noted in the Order in connection with Plaintiff's FMLA claim (Order at 38-39 [Doc.

No. 114]), Bar-Meir identifies several adverse actions: (1) the reduction in her employment to 75% time; (2) the loss of "flex time;" (3) the University's request of FMLA recertification; (4) the issue regarding her eight-minute afternoon break; and (5) the University's appeal of her unemployment insurance petition. Even if some of the University's alleged conduct toward Bar-Meir qualifies as adverse employment actions, there is absolutely no evidence that such actions were causally related to Bar-Meir's disability. While the Court found in the Order that material issues of fact precluded summary judgment as to the portion of Plaintiff's FMLA retaliation claim based on her reduction to 75% time, the Court found an arguable causal nexus between the two actions, mainly due to the temporal proximity between the reduction in time and Plaintiff's FMLA leave. With respect to her disability claims, however, there is no such causal relationship between the alleged adverse actions and her alleged impairment. The reasons advanced by Defendant for the alleged adverse actions, as set forth in the Order, are unrelated to Plaintiff's impairment. In addition, as stated in the Order, there is also no evidence of constructive discharge in violation of the ADA, Title VII, the FMLA and the MHRA. (Order at 62-64 [Doc. No. 114].) This conclusion applies with equal force to Bar-Meir's claims of constructive discharge under the ADAAA.

Plaintiff's claims of a hostile work environment based on disability also fail. As noted in this Court's Order, claims of hostile work environment are actionable only if the conduct at issue is "so severe or pervasive as to alter the conditions of the [plaintiff's] employment and create an abusive working environment." (Order at 60 [Doc. No. 114] (citing Frieler v. Carlson Mktg. Group, Inc., 751 N.W.2d 558, 571 n.11 (Minn. 2008)). The record does not support a finding of such conduct related to any of Plaintiff's asserted claims, including disability.

There are also no disputed issues of material fact with respect to Plaintiff's claims for failure to reasonably accommodate. An employer violates the ADAAA if the employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A) (2009). The corresponding regulations state: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3) (2012).

As set forth in the Order, in early 2009, the University asked for documentation regarding Bar-Meir's frequent absences and told her that if the absences were related to a health condition, she should contact the University's Disability Services Office to discuss a possible accommodation. (Order at 13) (citing Krachmer Aff. ¶ 21 [Doc. No. 66].) Disability Services receives and processes requests for workplace accommodations for University staff. (Id.) (citing Binsfeld Aff. ¶ 2 [Doc. No. 65].) In June 2009, Bar-Meir emailed Dr. Krachmer, asking for a change in the location of her office and a change in supervisor. (Krachmer Aff. ¶ 22 [Doc. No. 66].) She submitted a letter from one of her treating physicians, Dr. William Robiner, in support of her request. (Id., Ex. A to Krachmer Aff. [Doc. No. 66-1].) Dr. Krachmer advised Bar-Meir to submit her request for accommodation to Disability Services, for which he provided contact information. (Id.)

7

After she was referred to Disability Services, Neal Binsfeld, the Disability Services Coordinator, provided Bar-Meir with information regarding the Disability Services process and available services. (Binsfeld Aff. ¶ 3 [Doc. No. 65].) Binsfeld contends that although he was fully prepared to provide services and explore workplace accommodations with Bar-Meir, she failed to follow through with the Disability Services process: "She never provided [Disability Services] with the information necessary to initiate the process, to determine whether she was a qualified individual with a disability, or otherwise qualified for an accommodation; or to determine what accommodation she might require." (Id. ¶ 4.) In July 2009, when Bar-Meir questioned why Disability Services required additional information, Human Resources Manager Nicolai informed Bar-Meir that Disability Services was the University's "central repository" for detailed disability medical information and advice regarding reasonable accommodations. (Ex. 75 to Bar-Meir Opp'n Decl. [Doc. No. 94-1 at 9].) Ms. Nicolai indicated that "one of the functions of the Disability Services consultants is to advise departments on what accommodations would be reasonable for the health condition identified by the care provider, based on their review of the employee's job description. . . ." (Id.) Plaintiff concedes that she did not provide Disability Services with the information necessary to assess her request, because she objected to completing paperwork that would label her as "disabled." (Id.; Bar-Meir Opp'n Decl. ¶ 135 [Doc. No. 85].)

Bar-Meir's attorney requested the same accommodations of a new office location and different supervisor in a July 24, 2009 letter to Dr. Krachmer. (Ex. A to Benrud Aff. [Doc. No. 62-1]. On July 27, the University responded to the letter, indicating it had attempted to work with Plaintiff in determining whether a reasonable accommodation was possible, but that Bar-

8

Meir failed to follow through with Disability Services. (Ex. B to Benrud Aff. [Doc. No. 62-2].) Nevertheless, in a subsequent August 14, 2009 letter to Plaintiff's counsel, the University agreed to change Bar-Meir's office location. (Ex. D to Benrud Aff. at 1 [Doc. No. 62-2].) It did not agree, however, to a change in supervisor, indicating that changing the chain of supervision would fundamentally alter the position. (Id. at 2.) In her deposition, Ms. Shifrin testified that, as a practical matter, a change in supervisors was not possible because "[w]e didn't have anybody else to supervise her." (Shifrin Dep. at 196, Ex. 16 to Nickitas Decl. [Doc. No. 96-3].)

    Ms. Shifrin described the bureaucratic process of finding office space at the University as very time-consuming, particularly if a department sought to utilize space occupied by another department. (Id.. at 199-200.) While Ms. Shifrin and Dr. Krachmer did not request space from another Medical School department for Bar-Meir's office, Shifrin testified that they "were hoping [they] could accommodate her" by moving her into a different office within the Ophthalmology Department. (Id. at 203; 208.) Shifrin testified that she was in touch with Ms. Nicolai in Human Resources, asking, "What are we going to do? We do not have any space right now. How should we handle the situation?" (Id. at 203.) Shifrin further stated that she told Nicolai, "once we get the space where we can place her, we can move her." (Id. at 202.) Shifrin conceded that she was concerned about moving Bar-Meir, at one point, because of her need to oversee Bar-Meir's work, but she also knew that Bar-Meir was requesting a move and wanted to accommodate her. (Id. at 203.) Also, Shifrin was aware that Dr. Krachmer had concerns about who would monitor Bar-Meir's work if she moved to a different office. (Id. at 213.) By August 2009, Shifrin supported an office move, provided that space was available. (Id. at 215.) As noted, the University found space for Bar-Meir, in a separate office, next door to Shifrin. (Id. at

202.)  After Bar-Meir returned from leave on September 3, 2009, Shifrin did not meet with her. (Id. at 252.)  Bar-Meir met with Human Resources staff, went to lunch, but never returned.  (Id.; Nicolai Aff. ¶ 40 [Doc. No. 64].)

Assuming that Bar-Meir could "show that the requested accommodation is reasonable on its face, i.e., ordinarily or in the run of cases," Peebles v. Potter, 354 F.3d 761, 768 (8th Cir. 2004) (citation and internal quotation marks omitted), the University accommodated Plaintiff's request for a different office.  Regarding Bar-Meir's request for a different supervisor, the record shows that Shifrin was the sole applicable supervisor within the Ophthalmology Department. The record therefore shows "circumstances that demonstrate undue hardship in the particular circumstances." Id.  There is no showing of bad faith or improper motive in the decision to maintain Ms. Shifrin as Bar-Meir's supervisor.

The facts also fail to support any failure on the University's part in the interactive process to devise a reasonable accommodation.  Again, there is no showing of bad faith.  To the extent that Shifrin and Krachmer may have initially been reluctant to move Bar-Meir to a separate space, their concerns were based on the need to monitor Bar-Meir's work.  Moreover, the record indicates that the University itself suggested the possible need for reasonable accommodation in early 2009, by referring Bar-Meir to Disability Services if her absences were caused by a health condition.  Bar-Meir failed to formally engage in the interactive process with Disability Services because she did not want to be considered disabled.  Despite her failure to follow the University's standard procedure by working with Disability Services, the University nonetheless provided Bar-Meir with her own office space.

Based on the record, the Court finds that there are no disputed issues of material fact with

respect to Plaintiff's disability-related claims under the ADAAA, the MHRA, and to the extent she alleges such claims, the ADA.  The Court therefore affirms the dismissal of those claims.

In addition, as noted in the Court's Order, Plaintiff's retaliation claims related to disability also fail.  (Order at 44 [Doc. No. 114].)  Whether the claims arise under the ADA, the ADAAA or the MHRA, Plaintiff has failed to show that any materially adverse action was causally linked to the protected conduct.  Wilke v. Dep't of Health and Human Servs., 638 F.3d 944, 955 (8th Cir. 2011).

### C. Plaintiff's Claims Related to "Bumping Rights."

Plaintiff argues that the Court erred in drawing various conclusions as to her ADAAA and MHRA claims regarding the exercise of her "bumping rights."  Plaintiff speculates that had the University reduced her appointment below 75%, such an appointment would have been low enough to permit her to exercise her seniority rights, "bump" less senior employees for other open accounting positions, and presumably "gain[] full pay as an 8223 [Plaintiff's accounting classification code]."  (Pl's Letter at 2 [Doc. No. 116]; see also Bar-Meir Decl. ¶ 5 [Doc. No. 70]; Second Am. Compl. ¶ 42 [Doc. No. 21].)  Bar-Meir's argument is without merit.

As set forth in the Order, the record shows that the impetus to keep Plaintiff's appointment at 75% was to provide her with the benefits and income of a higher-level appointment.[2]  The decision to keep Plaintiff at 75% time, as opposed to below that level, bears

---

[2] In her letter requesting leave for reconsideration, Plaintiff contends that the Court labeled the 25% pay cut as "good-hearted gesture," improperly "weighing motive, evidence and credibility."  (Pl's Letter at 2 [Doc. No. 116].)  Nowhere in the Order did the Court use the phrase "good-hearted gesture" in describing Plaintiff's reduction to a 75% appointment.  The Court merely addressed Plaintiff's bumping argument, noting evidence in the record that Shifrin and Krachmer set Bar-Meir's appointment at 75%, even though they believed her duties justified a lower appointment.  (Order at 63 [Doc. No. 114].)  As Dr. Krachmer attests, they believed that

no relation to any of Plaintiff's disability-related claims. No facts support the allegation that the decision keep Plaintiff at the 75% level was causally related to claims for disability discrimination, reasonable accommodation or hostile work environment. Ironically, had the University wanted to force Bar-Meir to quit, or at least leave the Department, it could have lowered her appointment below 75%, at which point Bar-Meir would have been able to exercise her bumping rights, and possibly leave the Department of Ophthalmology, or the University altogether.

In conclusion, the Court has considered Plaintiff's arguments for leave to move for reconsideration. For the reasons set forth herein, reconsideration is not warranted.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

Plaintiff's letter request [Doc. No 116] to permit a motion for reconsideration of this Court's June 8, 2012 Order is **DENIED.**

Dated: June 26, 2012

                                              s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge

---

Bar-Meir needed the benefits and income of the higher-level (75% or higher) appointment. (Krachmer Aff. ¶ 18 [Doc. No. 66].) The Court's role in examining the evidence on this issue was consistent with the summary judgment standard of review to determine whether there were any disputed issues of material fact.